IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BYRON MCMATH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:10cv21-SRW |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, as Receiver for ) | |
| Colonial Bank, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Byron McMath asserts state law claims against the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Colonial Bank, arising from Colonial Bank's disclosure of plaintiff's financial records to the Alabama State Bar. This action is presently before the court on the motion to dismiss filed by the FDIC, as receiver for Colonial Bank. (Doc. # 15). Upon consideration of the motion and plaintiff's responses (Doc. ## 18, 19), the court concludes that the motion is due to be granted as to Count VI and denied as to plaintiff's remaining claims.

**Motion to Dismiss for Lack of Jurisdiction**

Plaintiff commenced this action in state court on May 26, 2009, asserting claims against Colonial Bank. On August 14, 2009, the FDIC was appointed as receiver for Colonial Bank and, on September 11, 2009, the FDIC appeared in the state court action and moved to be substituted for the bank. At the same time, the FDIC moved for a ninety-day stay of

the action. On September 23, 2009, the state court granted the motion to stay and, on October 15, 2009, the court granted the FDIC's motion to substitute. (Notice of Removal, Exhibits A-D). On December 3, 2009, near the end of the stay ordered by the state court, the FDIC mailed a "Notice to Discovered Creditor" letter and a claims form addressed to plaintiff in care of his attorney. Plaintiff's counsel received the form on December 7, 2009. (Doc. # 21-1, Quick affidavit and attachments; see also Plaintiff's brief, p. 4). The FDIC removed the action to this court on January 7, 2010, two weeks after the state court stay expired. (Doc. # 1).

Defendant first argues that this court lacks subject matter jurisdiction over plaintiff's claims. See Doc. # 16, p. 5, ¶ 9 ("Pursuant to the provisions of 12 U.S.C. § 1821(d)(13)(D), this Court does not have the jurisdiction to initially determine the claims against the FDIC as Receiver as set forth in the pleadings of the Plaintiff because he failed to exhaust the administrative claims process required by federal law."); see also Doc. # 21, ¶ 3, Defendant's Reply Brief (characterizing the present motion as a factual challenge to subject matter jurisdiction and arguing that plaintiff bears the burden of proving jurisdiction). However, the court's analysis of its jurisdiction is not as straightforward as defendant would have it; the jurisdictional analysis differs depending on whether the claim involved was pending in litigation before the receivership. In Damiano v. FDIC, 104 F.3d 328 (11th Cir. 1997), the Eleventh Circuit considered the question of the court's jurisdiction under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") over a pre-receivership

claim, *i.e.*, a claim that was pending when the receivership commenced. The receiver had not invoked its right to the stay permitted by the FIRREA in a timely manner and, also, had not provided written notice of its intent to proceed administratively to the plaintiff or her attorney directly. In reaching its holding that the plaintiff could pursue her claims in court despite her failure to file an administrative claim, the court relied on the difference between the statutory scheme FIRREA provides for cases filed after appointment of a receiver and that for lawsuits in progress when a receiver is appointed. The court stated:

> For post-receivership claims the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies. See 12 U.S.C. § 1821(d)(13)(D); McMillian v. F.D.I.C., 81 F.3d 1041, 1045 (11th Cir. 1996)(involving a post-receivership employee claim). The statutory scheme is more complex for claims asserted in pre-receivership lawsuits. Subject matter jurisdiction is ordinarily tested as of the time of filing the complaint. . . . Therefore, courts in which lawsuits were pending when the RTC is appointed receiver remain vested with jurisdiction.

Id. at 332. The court concluded that "Congress intended for the receiver to decide whether to 'proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, *or* forego the privilege of requesting a stay and thus proceed judicially.'" Id. at 334 (quoting Whatley v. Resolution Trust Corporation, 32 F.3d 905, 908 (5th Cir. 1994))(emphasis in Whatley). Because the receiver had not moved for a stay of the action within ninety days of its appointment as receiver – the time limit specified in 12 U.S.C. § 1821(d)(12) for requesting a stay – the court held that the receiver had elected to proceed judicially. Damiano, 104 F.3d at 335; see id. at 334 (§ 1821(d)(12) "specifically gives the receiver the right, but not the duty, to stay a pending action within the first ninety

days of being appointed as a receiver").

In FDIC v. LaCentra Trucking, Inc., 157 F.3d 1292 (11th Cir. 1998), the lawsuit was pending in state court when a receiver was appointed for the plaintiff. Id. at 1295-97.[1] Thereafter, the receiver sought and obtained a stay in state court and then removed the action to the United States District Court. Id. at 1297. It did not, however, advise the defendants of any need to pursue their lien claims administratively. The motion to stay made no reference to administrative exhaustion, and the receiver did not provide the defendants with notice that it was requiring them to file administrative claims. Id. at 1297-98. The district court granted summary judgment to the receiver on the ground that the defendants had failed to present administrative claims. In reversing the district court's final judgment of foreclosure in favor of the receiver, the Eleventh Circuit again distinguished pre-receivership lawsuits from those filed after appointment of a receiver:

> RTC relies on the lienors' failure to exhaust by presentation of claims to the receiver prior to July 6, 1992, the published cut-off date, thereby precluding jurisdiction under § 1821(d)(13)(D). This ignores the central issue of whether jurisdiction of the federal court over the pre-receivership claims remained viable and, if it did, the actions required of the receiver. The district court disposed of these questions in a single sentence: "[T]he exhaustion requirement applies regardless of whether [as is true in this case] a claimant has brought suit on its claim prior to the RTC's appointment as receiver." This did not address the pre-existing jurisdiction. (Moreover, it was not adjusted to the facts. The pre-receivership suit was brought by Flagler, not the claimants.) Some cases speak in terms of the continued life of the pre-receivership case *after* a receiver is appointed, others of the continued jurisdiction of the *court*

---

[1] The plaintiff was a savings and loan association seeking to foreclose its mortgage on a construction site; defendants were entities which had filed claims of liens for work or materials supplied to the construction job. Id. at 1295.

4

in which that case is pending. However phrased, neither the existence of a pre-receivership claim against the depository institution, nor the requirement of presenting claims to the receiver, nor the actual presentation – none of these – strips away the existing jurisdiction of the court over a pre-receivership claim. Nor is the court required to dismiss the pre-receivership case.

Id. at 1300 (emphasis and text in brackets in original). The court further stated:

The purpose of the stay provision as explained by the drafters, "[is to] give the [receiver] a chance to analyze pending matters and [to] decide *how* best to proceed." H.R.Rep. No.101-54(1), at 331 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 127 (emphasis added). But it is not enough for the receiver to obtain a stay. If RTC desired to insist on the use of its administrative process it was required to make its position known to the claimant.

> Thus, the RTC must satisfy two conditions to require the plaintiff in a pre-receivership lawsuit to exhaust its administrative remedies before continuing the action: (1) *The RTC must "insist on the use of its administrative processes," by staying the action and informing the plaintiff that it is doing so pending exhaustion of the administrative remedies,* and (2) it must do so in a timely fashion, that is, within the ninety-day period specified in § 1821(d)(12). (Footnote omitted). (Emphasis added).

Id. at 1303 (quoting Damiano, 104 F.3d at 335).[2]

---

[2] The cited statutory provision states:

**Suspension of legal actions**
**(A) In general**

After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed –
(i) 45 days, in the case of any conservator; and
(ii) 90 days, in the case of any receiver,
in any judicial action or proceeding to which such institution is or becomes a party.

**(B) Grant of stay by all courts required**

The relevant facts in the present case differ from those in Damiano; here, the receiver requested a stay within ninety days of its appointment. Also, unlike the situation in LaCentra Trucking, the FDIC provided the plaintiff in this case with a claims form and written notice of the administrative claims process. However, while the FDIC provided notice directly to the potential claimant before the expiration of the stay granted by the state court, it did not do so until *after* the claims bar date had passed. (See Doc. # 21-1, Quick affidavit and attachments). The letter sent to plaintiff by the FDIC on December 3, 2009, indicated that the "Claims Bar Date" was November 19, 2009. Id.  The FDIC advised plaintiff that:

> Although the Claims Bar Date has passed, under federal law the Receiver may consider claims filed after the Claims Bar Date if: 1) the claimant did not receive notice of the appointment of the Receiver in time to file a claim, AND 2) the claim is filed in time to permit payment of the claim. . . . Nothing in this letter is intended to imply that the Receiver has extended the Claims Bar Date.

Id.  The letter further stated, "***for the Receiver to consider your claim, you must prove to the***

---

> Upon receipt of a request by any conservator or receiver pursuant to subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties.

12 U.S.C. § 1821(d)(12)(headings in bold type in original).   In Praxis Properties, Inc. v. Colonial Savings Bank, 947 F.2d 49, 71 (3rd Cir. 1991), the Third Circuit found the language of this provision to permit at least three interpretations, *i.e.*, that it requires the court to grant: (1) a stay of ninety days duration, no matter when the receiver seeks the stay; (2) a stay which may end no more than ninety days after the appointment of the receiver, regardless of when it is requested; or (3) a stay with no limitation as to duration, so long as the receiver requested the stay within ninety days of its appointment. Id. at 70.  Resorting to legislative history, the court concluded that § 1821(d)(12) requires that, to be entitled to a stay of any duration, the receiver must request it within ninety days of the receiver's appointment. Id. at 70-71.  In concluding that § 1821(d)(12) "specifically gives the receiver the right . . . to stay a pending action within the first ninety days of  being appointed as a receiver[,]"  the Damiano court relied on Praxis.  Damiano, 104 F.3d at 334.

***Receiver's satisfaction that you did not have knowledge of the appointment of the Receiver in time to file a claim before the Claims Bar Date***." Id. (italics, bold type, and underlining in original).³  The FDIC further advised plaintiff that he "must" – in addition to completing and signing the proof of claim form – "[p]rovide supporting documentation both regarding your claim *and your lack of knowledge of the appointment of the Receiver* (for example, evidence that someone was on active military duty stationed overseas at the time of the appointment of the Receiver)[,]" on or before March 4, 2010. Id. (emphasis added).

While the facts of this case differ in some respects from those in LaCentra Trucking, the Eleventh Circuit's analysis in that case suggests that the receiver must, at least, make its choice to insist on administrative processing known to the opposing party in the pending litigation in time to allow a claim to be filed in a timely manner:

> The choice given [the receiver] to choose between litigation and administrative process means little if the receiver does not make known what its choice is so that the case, or the administrative process, can proceed accordingly.
>
> The fact that [the receiver] obtained a stay does not alter the result. The stay is for [the receiver's] benefit to allow it to analyze the case, determine its status, examine the merits of pending litigation, and decide on its course of action. It can choose litigation or administrative processing. The stay neither affects the choice nor diminishes the necessity to make a choice and reveal it.

LaCentra Trucking, 157 F.3d at 1304 (footnote and citation omitted).  In this case, as in LaCentra Trucking, the FDIC's motion for stay gave no indication of its choice regarding

---

³ Plaintiff could not, obviously, demonstrate the required lack of knowledge of the receivership; on September 11, 2009 – more than two months before the "claims bar date" – the FDIC moved to be substituted for the defendant in plaintiff's pending lawsuit on the basis of its appointment as receiver for Colonial Bank. (See Doc. # 1-4, pp. 32-36).

administrative processing; it merely sought a stay for ninety days, citing 12 U.S.C. § 1821(d)(12). (See Doc. # 1-4 at pp. 37-41). As noted above, the LaCentra Trucking court quoted and relied on language from Damiano indicating that a receiver seeking to require an opposing party in pre-receivership litigation to resort to the administrative process must "*insist on the use of its administrative processes, by staying the action and informing the plaintiff that it is doing so pending exhaustion of the administrative remedies* . . . in a timely fashion, that is, within the ninety-day period specified in § 1821(d)(12)." LaCentra Trucking, 157 F.3d at 1303 (citation and internal quotation marks omitted; emphasis in LaCentra Trucking). The Damiano court had relied on the Eleventh Circuit's earlier analysis in Aguilar v. FDIC, 63 F.3d 1059 (11th Cir. 1995), in which the court explained that "[w]here a lawsuit against a financial institution is pending when the FDIC is appointed receiver *and the FDIC timely insists on the use of its administrative processes,* the court action will be suspended, but only suspended; the court retains jurisdiction while the plaintiff exhausts the administrative remedies." Id. at 1061-62 (emphasis added); see Damiano, 104 F.3d at 334-35. Upon careful review of the Eleventh Circuit precedent in pre-receivership lawsuits, the court concludes that the FDIC failed to inform the plaintiff of its insistence on exhaustion of the administrative claims process in this case in a timely manner. It did not notify plaintiff of its decision to require administrative exhaustion "within the ninety-day period specified in § 1821(d)(12)[,]" (see Damiano, 104 F.3d at 335; see also LaCentra Trucking, 157 F.3d

at 1303),[4] nor did it do so in advance of the "claims bar date" so as to allow plaintiff to file a timely administrative claim.[5] Under these circumstances – even assuming that a plaintiff's failure to file an administrative claim in a pre-receivership lawsuit might otherwise operate to divest the court of subject matter jurisdiction over the claim – plaintiff may proceed on his claims in this case in this judicial forum without having first exhausted the administrative claims process. The FDIC's argument that this court lacks jurisdiction to determine plaintiff's claims is without merit.

### Motion to Dismiss pursuant to Rule 12(b)(6)[6]

#### Statute of Limitations

---

[4] For the reasons stated above (*supra,* n. 2), the court concludes that the ninety-day period to which the Eleventh Circuit refers is that period beginning on the date the receiver is appointed. In this case, that period expired on November 12, 2009.

[5] The purpose of the receiver's notice to the opposing litigant of its decision regarding whether to proceed administratively or judicially on the litigant's claim, according to the Eleventh Circuit, is to "make known what [the receiver's] choice is so that the case, or the administrative process, can proceed accordingly." LaCentra Trucking, 157 F.3d at 1304. The FDIC's December 3, 2009 letter to the plaintiff – including a proof of claim form and instructions requiring plaintiff to submit evidence to prove to the FDIC that he did not have notice of the receivership in time to file a claim before the November 19, 2009 claims bar date – does not constitute sufficient notice. As the Eleventh Circuit stated in Damiano, "[t]o hold otherwise would be to allow the [receiver] to ignore a lawsuit of which it clearly was aware and in which it had intervened, thus luring the claimant to assume that the [receiver] is ready to deal with it as a litigant, while '[i]n reality, . . . the receiver lies in ambush, awaiting expiration of the administrative deadline so that it may dispose of the claim without consideration of its merits.'" Damiano, 104 F.3d 328 (quoting Whatley v. Resolution Trust Corporation, 32 F.3d 905, 908 (5th Cir. 1994)).

[6] In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court treats the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. Rivell v. Private Health Care Systems, Inc., 520 F.3d 1308, 1309 (11th Cir. 2008). "[T]he complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

9

Defendant contends that plaintiff's claims against it are due to be dismissed, in part, because – while the disclosure to the Alabama State Bar alleged as a basis for plaintiff's claims occurred within the applicable two-year statutes of limitations (see Defendant's Brief, Doc. # 16 at p. 11 n. 2) – plaintiff's complaint includes "factual allegations" which pre-date the disclosure.  Defendant argues that the "factual allegations of the amended complaint" are barred by the statute of limitations (id. at p. 11) and, also, that any claims that rely on these allegations are time-barred (id. at pp. 11, 12).  Plaintiff responds that, "[a]side from giv[ing] the factual history of the Plaintiff's cause of action, the Plaintiff has not and will not attempt to enforce claims against the Defendant that fall outside of the applicable statute of limitation" and that defendant's contention that plaintiff asserts time-barred claims is "untrue."  (Doc. # 18, p. 12).  The amended complaint does not include the dates of the alleged acts.  However, defendant admits that the disclosure of which plaintiff complains occurred on May 25, 2007, and that plaintiff's complaint filed on May 26, 2009, is nevertheless timely as to that disclosure because the two-year anniversary of the disclosure fell on Memorial Day and plaintiff filed his complaint the following day.[7]  (Doc. # 16, p. 11, n. 2).  Thus, plaintiff's claims arising from this disclosure – Counts I through V – are timely.  However, Count VI – the only actual claim (as opposed to "factual allegation") added in the

---

[7] Plaintiff alleged in his original complaint that the disclosure occurred "on or about" May 25, 2007.  (See Doc. # 1-4, Exhibit D to Notice of Removal at p. 2, Complaint, ¶ 4).  In his amended complaint, he alleges that he "timely filed suit against Colonial Bank in the Circuit Court of Montgomery County, Alabama, on May 26, 2009, the next business day following a legal holiday." (Amended Complaint, ¶ 22).

amended complaint – is a claim for negligent misrepresentation. Plaintiff does not allege within Count VI the substance of the alleged misrepresentation (see ¶¶ 39-40). It is not apparent to the court which of the factual averments incorporated by reference into Count VI plaintiff asserts as the basis for his misrepresentation claim. (See Count VI ("Plaintiff herein incorporates by reference all previous paragraphs as if set out in full"); see also ¶¶ 9, 11 (alleging assurances that Colonial would not allow plaintiff's attorney trust account to be levied); ¶ 13 (alleging statement that an attorney trust account could be levied if it were not an IOLTA account). The court need not decide which of these alleged representations, if any, forms the basis of the negligent misrepresentation claim plaintiff asserts in Count VI because – as defendant argues – it is apparent that the alleged representations by bank employees or agents "logically predate" the May 25, 2007 disclosure.[8] (Defendant's brief, p. 11; see Amended Complaint, ¶¶ 19-20 (alleging the challenged disclosure occurred by copy of a letter from the bank's counsel in response to plaintiff's earlier letter to the Alabama State Bar); ¶ 13 (alleging that plaintiff contacted the Alabama State Bar after the representations

---

[8] Plaintiff also alleges that bank representatives "never upheld their duty to disclose this type of information [*i.e.,* that the IRS 'only issues the FEIN which is subject to the levy' and the bank executes the levy] to the Plaintiff." Amended Complaint, ¶ 16). However, plaintiff styles Count VI as a "negligent misrepresentation" claim, not a "suppression" claim. A misrepresentation claim requires proof of an affirmative misrepresentation of material fact. See Ala. Code § 6-5-101; Blaylock v. Cary, 709 So.2d 1128, 1131 n. 5 (Ala. 1997). Even if plaintiff intended to assert a suppression claim pursuant to Ala. Code § 6-5-102 in Count VI, he does not allege facts suggesting that the failure to disclose "this type of information," induced plaintiff to act in a manner that caused him injury, as required to state such a claim. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 423 (1997)(stating elements of suppression claim).

alleged in ¶¶ 9, 11, and 13). Additionally, plaintiff allegations indicate that he had "receiv[e]d notice that an actual levy had been executed" before he contacted the Alabama State Bar (id., ¶¶ 11-13). Therefore, any misrepresentation claim arising from the statements alleged in the complaint is barred by the two-year statute of limitations for such claims. See Ala. Code, § 6-2-3. Accordingly, Count VI of the Amended Complaint, plaintiff's claim of "Negligent Misrepresentation," is due to be dismissed as untimely.[9]

## Absolute Privilege

Defendant further contends that the disclosure to the Alabama State Bar is "absolutely privileged" and that, therefore, plaintiff may not maintain his claims arising from that disclosure. Defendant argues:

> While Plaintiff's amended complaint is still extremely vague, upon information and belief from Plaintiff's demands prior to filing this suit, complaints filed with Colonial's regulators and the initial Complaint in this case, the FDIC believes Plaintiff is contending that Colonial, through its general counsel, David Byrne, Jr. (active member in good standing of the

---

[9] Even if this misrepresentation claim were not time-barred, plaintiff has not alleged facts regarding reliance or resulting injury. Plaintiff has not alleged what action he took or failed to take as a result of the alleged representations, nor how his reliance caused injury to him personally (as opposed to his clients). See Foremost Ins. Co, *supra*, 693 So.2d at 422 (to establish a misrepresentation claim, plaintiff must prove that he justifiably relied on the false representation and that his reliance was a proximate cause of his damage); see also Fed. R. Civ. P. 9(b)(requiring that circumstances of alleged fraud be stated with particularity). Additionally, to the extent plaintiff relies on an alleged misrepresentation pertaining to events in the future – i.e., that "Colonial Bank would not permit the IRS to levy targeted funds in the Plaintiff's attorney trust account" (see Amended Complaint, ¶ 9), plaintiff is required also to allege an intent to deceive and an intent not to act as promised. See Coastal Concrete Co. v. Patterson, 503 So.2d 824, 826 (Ala. 1987). The representation alleged in ¶ 13, also, does not appear to be a statement of "fact" but, rather, the speaker's interpretation of the law regarding levy of attorney trust accounts.

> Alabama State Bar), improperly provided information to the Alabama State Bar on May 25, 2007 concerning activity in Plaintiff's attorney trust account discovered when Colonial honored an IRS tax levy. This information resulted in Mr. McMath being suspended from his practice of law. See Alabama Lawyer, March 2009. To the extent he claims that Mr. Byrne reported unethical activity occurring in the Plaintiff's attorney trust account to the Alabama State Bar, such disclosure by Colonial through its in-house counsel is absolutely privileged and immune from attack.

(Defendant's brief, pp. 6-7).

> Ala. Code § 5-5A-43 provides:
>
> A bank shall disclose financial records of its customers pursuant to a lawful subpoena, summons, warrant or court order issued by or at the request of any state agency, political subdivision, instrumentality, or officer or employee thereof and served upon the bank. No bank, director, officer, employee or agent thereof shall be held civilly liable or criminally responsible for disclosure of financial records pursuant to a subpoena, summons, warrant or court order which on its face appears to have been issued upon lawful authority.

Id. The Comment to the provision states that "[t]his section governs disclosure to state instrumentalities" and that "[c]ustomer records should be disclosed only upon subpoena or court order." Id., Comment.

Plaintiff alleges, *inter alia*, that: (1) he was a banking customer at Colonial's branch in Jasper, Alabama, where he maintained several personal accounts and an attorney business trust account (Complaint, ¶ 23); (2) "legal counsel for the Bank" copied the Alabama State Bar on the Bank's response to plaintiff's earlier letter to the Alabama State Bar (id., ¶ 19); (3) at that point, Bank representatives also released information concerning plaintiff's personal and trust accounts and that they did so without notice to the plaintiff or his

authorization (id., ¶ 20); (4) Bank representatives released information without being presented with any lawful subpoena, summons, warrant, or court order (id., ¶ 26); and (5) Bank representatives released information in the hopes that the released information would cause plaintiff's claims against the Bank to be viewed suspiciously (id. ¶¶ 34, 37).

Plaintiff does not allege "that Mr. Byrne reported unethical activity occurring in the Plaintiff's attorney trust account to the Alabama State Bar," nor does he allege that Byrne is an "active member in good standing of the Alabama State Bar." He alleges no facts concerning any disciplinary action taken against him by the Alabama State Bar, and no allegations of the complaint suggest that plaintiff was suspended from the practice of law as the result of information provided to the Alabama State Bar by Byrne. (See Defendant's brief, pp. 6-7). In its reply brief, defendant argues that "[t]he undisputed fact is that there was such a judicial proceeding and it resulted in the Plaintiff's suspension from the practice of law" and that for plaintiff to claim that the disclosure of information to the Alabama State Bar was "not done in the course of and/or directly related to a contemplated judicial proceeding is entirely inconsistent with the actual facts of this case." (Defendant's Reply Brief, p. 4)(citing Alabama Lawyer, March 2008).

The underlying facts of this case may be exactly as defendant argues. However, defendant filed no evidence with its motion which would permit the court to convert the present Rule 12(b)(6) motion to one for summary judgment,[10] and it now asks the court to

---

[10] Defendant filed evidence with its reply brief, but not with its initial brief. The evidence filed with the reply – the Quick affidavit – pertains only to defendant's jurisdictional argument.

dismiss plaintiff's claims – not on the basis of the allegations of the complaint – but on facts raised only in counsel's arguments in defendant's brief in support of the motion to dismiss. Defendant is not entitled to dismissal of plaintiff's claims on the present record on the basis of its privilege/immunity argument.[11]

## The D'Oench Doctrine

Defendant's remaining argument is that plaintiff's claims are barred by 12 U.S.C. §1823(e)(1), the codification of the common law D'Oench doctrine. The common law doctrine originated with the case of D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942); the rule, generally, is that "in a suit against the maker of a note by a federal deposit insurer, the maker is not allowed to raise a secret agreement between the maker and the payee bank as a defense." Bufman Organization v. FDIC, 82 F.3d 1020, 1023 (11th Cir. 1996)(citing D'Oench). The Bufman court explained that, "[i]n D'Oench, the maker of the note had sold bonds to the bank, and the bonds had defaulted. So that the bank would not have to show the past due bonds among its assets, the note was executed to the bank with the secret understanding that it would not be called for payment. The FDIC acquired the note as collateral for a loan to the bank, and sued the maker on the note." Id. at 1023-24 (citations omitted). Citing the Federal Reserve Act as evidencing a federal policy to protect the FDIC and the public funds it administers, the Supreme Court found the maker's defense to be barred, stating the federal common law test as:

---

[11] Defendant may, of course, address this defense more fully in a motion for summary judgment.

>   whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

D'Oench, 315 U.S. at 457-60. Under the doctrine, as codified, an agreement "which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . either as security for a loan or by purchase or as receiver of any insured depository institution" is not valid against the FDIC unless it is in writing, executed by the depository institution and the adverse party, approved by the institution's board or loan committee and reflected in the minutes, and has been an official record of the institution continuously since its execution. See 12 U.S.C. § 1823(e)(1); Bufman, 82 F.3d at 1024. "The D'Oench doctrine has expanded dramatically in scope so that it now also applies in many factual situations that do not directly parallel the facts in D'Oench." Id. "[The Eleventh Circuit] has stated the modern rule in plain terms as follows:

>   In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records."

Id. (citation omitted). The Eleventh Circuit has held "that D'Oench does not bar free-standing tort claims that are unrelated to any asset of the depository institution. Id. at 1025 (citations omitted). While "not all tort claims escape the D'Oench bar[,] . . . . the key inquiry is whether the tort claim is unrelated to a regular banking transaction." Id. (citation omitted).

16

The Eleventh Circuit further explained that a "regular banking transaction" usually results in the depository institution's acquisition of an asset, such as a note; it may, instead, create a liability in the bank, as with a letter of credit. Id. (citation omitted). The Bufman court reiterated the Supreme Court's explanation of "the three policies animating § 1823(e)(1)" and which also "are furthered by the common law D'Oench rule" as follows:

> First, § 1823(e)(1) ensures that federal and state examiners can rely on a bank's records when evaluating the bank's assets. Langley [v. FDIC, 484 U.S. 86, 91 (1987)]. The remaining two policies are reflected by the requirements that the "agreement" on which a claim or defense is based be executed and included in the bank's records at the same time that the related banking transaction is completed, and that the transaction be approved by the board or loan committee of the bank. 12 U.S.C. § 1823(e)(1)(B), (C), (D). "These . . . requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." Langley, 484 U.S. at 91[.]

Bufman, 82 F.3d at 1025. Finally, the Eleventh Circuit instructed that, "[i]n determining whether a particular claim is related to a regular banking transaction, [the court looks] not only to the type of claim, but to the allegations in the complaint and to the theory of recovery." Id. at 1026.

Defendant points out that § 1823(e) "bars certain allegations of tortious conduct" such as "alleged misstatements or fraudulent conduct," citing Langley, 484 U.S. at 92-94, and two Eleventh Circuit cases. (Defendant's brief, p. 10). Defendant then argues:

> In the present case, Plaintiff alleges tortious conduct on the part of the FDIC-R that is clearly related to the regular banking activities of Colonial. Specifically, Plaintiff alleges in his Complaint that Plaintiff maintained several personal accounts with Colonial as well as an attorney trust account and that

17

> Colonial unlawfully released information related to those accounts. See Amended Complaint at ¶¶ 5-18. The present case is analogous to Bufman in that Plaintiff claims Colonial owed him some duty that is not reflected in the Bank's records and thus falls squarely within 12 U.S.C. § 1823(e)(1). See Bufman, 82 F.3d at 1028. Accordingly, all of Plaintiff's claims are barred as a matter of law.

(Defendant's brief, pp. 10-11).

First, the court notes that the type of broad-brush analysis presented by defendant was rejected in Bufman, the case on which defendant relies. Defendant's contention that plaintiff's claims are barred because the "allege[d] tortious conduct . . . is clearly related to *the regular banking activities of Colonial*" (Defendant's brief, p. 10)(emphasis added) misstates the applicable test. The Bufman court's analysis of the plaintiff's claims in that case makes clear that, to determine whether a particular claim is barred under § 1823(e)(1) for lack of a written agreement satisfying the requirements of the statute, the claim must analyzed with respect to *the particular transaction* giving rise to the claim, not – as defendant argues – whether it relates to the "regular banking activities" of the failed bank. See, *e.g.*, Bufman, 82 F.3d at 1026 ("Bufman's claims illustrate that a securities fraud claim may be related to a regular banking transaction: his claims are based in part on the allegation that Bank M misrepresented or failed to disclose that the $400,000 Bufman note was unsatisfied before closing on the private stock offering. . . . Bufman's claims are related to a regular banking transaction: the Bufman note."). In the present case, plaintiff's claim does not arise from "a regular banking transaction" conducted by plaintiff and/or the bank related to plaintiff's deposit accounts; rather, his claim arises from the bank's disclosure of

information regarding his accounts to the Alabama State Bar. This disclosure – even if it ultimately proves to be privileged, because made by the bank's counsel in connection with a disciplinary action – can hardly be characterized as a "regular banking transaction" for purposes of the § 1823(e)(1) analysis. Additionally, whether or not the bank's disclosure is prohibited expressly by the plaintiff's agreement with the bank regarding his accounts, plaintiff alleges a disclosure in violation of an Alabama statute regulating banking, and he alleges facts sufficient to state a claim that the bank violated the obligation imposed on it by the statute. Defendant is not, accordingly, entitled to dismissal at this stage of the proceedings on the basis of the generalized arguments it now presents regarding the D'Oench doctrine's applicability to plaintiff's claims.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant's motion to dismiss (Doc. # 15) is GRANTED as to Count VI (plaintiff's claim of negligent misrepresentation), and DENIED as to all other claims.

DONE, this 31st day of March, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE